FILED

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ASHWIN JANAKIRAM (Cal. Bar No. 277513)
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2875/1259
    Facsimile: (213) 894-0141
    E-mail:    ashwin.janakiram@usdoj.gov
               alexander.schwab@usdoj.gov

2019 SEP 17  AM 11: 33

CLERK U.S. DISTRICT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

         v.

JOSHUA PEARSON,

        Defendant.

No. CR 19-CR 00543

PLEA AGREEMENT FOR DEFENDANT
JOSHUA PEARSON

1.    This constitutes the plea agreement between defendant
JOSHUA PEARSON ("defendant") and the United States Attorney's Office
for the Central District of California ("the USAO") in the
investigation of health care fraud and Anti-Kickback Statute
violations related to Fusion Rx.  This agreement is limited to the
USAO and cannot bind any other federal, state, local, or foreign
prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

      a.    Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with receipt of illegal remuneration in exchange for health care items, in violation of 42 U.S.C. § 1320a-7b(b)(1)(B).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

i.   Defendant understands and acknowledges that as a result of pleading guilty pursuant to this agreement, defendant may be excluded from Medicare, Medicaid, and all Federal health care programs.  Defendant agrees to complete and execute all necessary

documents provided by the United States Department of Health and Human Services, or any other department or agency of the federal government, to effectuate this exclusion within 60 days of receiving the documents.  This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

3.   Defendant further agrees:

a.   To forfeit personally and on behalf of any Defendant Entity (defined as any entity in which defendant has held an ownership interest; in which defendant has served as an officer, director, manager, partner, trustee or other representative; or over which Defendant has had the ability, whether through position or formal or informal agreement, to exercise control, including, but not limited to, PHIRX LLC ("PHIRX")), all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty (the "Forfeitable Assets").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the

3

Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.   To the entry as part of defendant's guilty plea of a money judgment of forfeiture against defendant and any Defendant Entity in the amount of $1,250,000, which sum defendant admits was derived from proceeds traceable to the violations described in the factual basis of this plea agreement.  Defendant understands that the money judgment of forfeiture is part of defendant's sentence, and is separate from any fines or restitution that may be imposed by the Court.  However, if the Money Laundering and Asset Recovery Section ("MLARS") of the Department of Justice grants any petition for

4

remission submitted by a victim of defendant's illegal activities as set forth in the information attached to this agreement as Exhibit A, then the USAO will not object to defendant receiving a credit towards payment of restitution in the amount actually paid to the victim pursuant to MLARS' grant of the petition for remission.

4. Defendant further agrees to cooperate fully with the USAO, the Defense Criminal Investigative Service, Federal Bureau of Investigation, Amtrak OIG, OPM OIG, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a. Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b. Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c. Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

5. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated April 6, 2017 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the

guilty plea hearing and the agreed to factual basis statement in this agreement.

6. If requested to do so by the USAO, act in an undercover capacity to the best of defendant's ability in connection with criminal investigations by federal, state, local, or foreign law enforcement authorities, in accordance with the express instructions of those law enforcement authorities. Defendant agrees not to act in an undercover capacity, tape record any conversations, or gather any evidence except after a request by the USAO and in accordance with express instructions of federal, state, local, or foreign law enforcement authorities

## THE USAO'S OBLIGATIONS

7. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to USSG § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

8. The USAO further agrees:

a. Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information.

1    Defendant agrees, however, that the USAO may use both Cooperation

2    Information and Plea Information: (1) to obtain and pursue leads to

3    other evidence, which evidence may be used for any purpose, including

4    any criminal prosecution of defendant; (2) to cross-examine defendant

5    should defendant testify, or to rebut any evidence offered, or

6    argument or representation made, by defendant, defendant's counsel,

7    or a witness called by defendant in any trial, sentencing hearing, or

8    other court proceeding; and (3) in any criminal prosecution of

9    defendant for false statement, obstruction of justice, or perjury.

10          b.    Not to use Cooperation Information against defendant

11   at sentencing for the purpose of determining the applicable guideline

12   range, including the appropriateness of an upward departure, or the

13   sentence to be imposed, and to recommend to the Court that

14   Cooperation Information not be used in determining the applicable

15   guideline range or the sentence to be imposed.   Defendant

16   understands, however, that Cooperation Information will be disclosed

17   to the United States Probation and Pretrial Services Office and the

18   Court, and that the Court may use Cooperation Information for the

19   purposes set forth in USSG § 1B1.8(b) and for determining the

20   sentence to be imposed.

21          c.    In connection with defendant's sentencing, to bring to

22   the Court's attention the nature and extent of defendant's

23   cooperation.

24          d.    If the USAO determines, in its exclusive judgment,

25   that defendant has both complied with defendant's obligations under

26   paragraphs 2 and 4 above and provided substantial assistance to law

27   enforcement in the prosecution or investigation of another

28   ("substantial assistance"), to move the Court pursuant to USSG

§ 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

e. Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in USSG Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention to the extent the offense level falls within Zone B or Zone C of the Sentencing Table.

## DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

9. Defendant understands the following:

a. Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b. Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c. Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to USSG § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d. At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has

1   provided or intends to provide constitutes or will constitute
2   substantial assistance.  The decision whether defendant has provided
3   substantial assistance will rest solely within the exclusive judgment
4   of the USAO.

5          e.   The USAO's determination whether defendant has
6   provided substantial assistance will not depend in any way on whether
7   the government prevails at any trial or court hearing in which
8   defendant testifies or in which the government otherwise presents
9   information resulting from defendant's cooperation.

10                      NATURE OF THE OFFENSE

11      10.  Defendant understands that for defendant to be guilty of
12  the crime charged in the sole count of the information, that is,
13  receipt of illegal remuneration for health care items, in violation
14  of 42 U.S.C. § 1320a-7b(b)(1)(B), the following must be true:
15  (1) defendant knowingly and willfully solicited or received
16  remuneration, directly or indirectly, in cash or in kind, from
17  another person; (2) the remuneration was given to induce defendant to
18  arrange for or recommend purchasing or ordering any good, service, or
19  item, for which payment may be made in whole or in part under a
20  Federal health care program; and (3) defendant knew that such payment
21  of remuneration was illegal.

22                         PENALTIES

23      11.  Defendant understands that the statutory maximum sentence
24  that the Court can impose for a violation of 42 U.S.C. § 1320a-
25  7b(b)(1)(B), is: ten years' imprisonment; a three-year period of
26  supervised release; a fine of $100,000 or twice the gross gain or
27  gross loss resulting from the offense, whichever is greatest; and a
28  mandatory special assessment of $100.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to mandatory exclusion from providing services paid for under a federal health care benefit program for a minimum of five years, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial

1 of admission to the United States in the future.  The court cannot,
2 and defendant's attorney also may not be able to, advise defendant
3 fully regarding the immigration consequences of the felony conviction
4 in this case.  Defendant understands that unexpected immigration
5 consequences will not serve as grounds to withdraw defendant's guilty
6 plea.

7                              FACTUAL BASIS

8      15.  Defendant admits that defendant is, in fact, guilty of the
9 offense to which defendant is agreeing to plead guilty.  Defendant
10 and the USAO agree to the statement of facts provided below and agree
11 that this statement of facts is sufficient to support a plea of
12 guilty to the charge described in this agreement and to establish the
13 Sentencing Guidelines factors set forth in paragraph 17 below but is
14 not meant to be a complete recitation of all facts relevant to the
15 underlying criminal conduct or all facts known to either party that
16 relate to that conduct.

17     Relevant Entities and Individuals

18     Between May 2014 and at least February 2016, in Los Angeles
19 County, within the Central District of California, and elsewhere,
20 defendant knowingly and willfully solicited and received illegal
21 kickbacks from DR. N. VAHEDI PHARMACY, INC., doing business as Fusion
22 Rx Compounding Pharmacy ("FUSION RX"), NAVID VAHEDI, and JOSEPH
23 KIEFFER, to generate and steer compounded drug prescriptions to
24 FUSION RX for dispensing.

25     FUSION RX, a pharmacy administered by VAHEDI, was a provider of
26 compounded drugs, that is, drugs that are manufactured to meet the
27 needs of a specific patient because an FDA-approved alternative fails
28 to meet those needs.  The provision of compounded drugs is often

1   reimbursed by insurance providers and federal health care benefit
2   programs at a higher rate than FDA-approved drugs due to the
3   individual tailoring necessary in their preparation.  KIEFFER
4   partnered with VAHEDI, through a business entity KIEFFER controlled,
5   Sheridan Medical, to generate prescriptions, steer referrals, and
6   dispense compounded drugs through FUSION RX by acting as an
7   intermediary between FUSION RX and individuals known as "marketers"
8   who would steer referrals for compounded drugs to FUSION RX in return
9   for kickbacks.
10      Defendant -- operating through his business entity, PHIRX LLC
11  ("PHIRX") -- was one of the primary marketers who generated
12  prescription referrals for compounded drugs to be dispensed at FUSION
13  RX.
14          Kickbacks Paid for Prescription Referrals
15      FUSION RX, VAHEDI, and KIEFFER sought to have prescriptions for
16  compounded drugs submitted to FUSION RX so that FUSION RX could then
17  bill various insurance providers, including Federal health care
18  programs such as TRICARE, for the provision of those compounded
19  drugs.  After learning of FUSION RX, defendant contacted VAHEDI so
20  that defendant could work for FUSION RX and generate compounded drug
21  prescription referrals for the pharmacy.  In response, VAHEDI
22  directed defendant to KIEFFER, so that defendant and KIEFFER could
23  work together steering prescription referrals to FUSION RX.
24      Specifically, in exchange for the generation and routing of
25  compounded drug prescriptions by marketers like defendant, VAHEDI,
26  through FUSION RX, paid kickbacks to KIEFFER, through Sheridan
27  Medical, to avoid the appearance that the pharmacy was paying for
28  compounded drug prescription referrals.  The kickbacks represented a

varying percentage ranging around 50 percent of the amount insurance plans reimbursed for the prescription referrals. KIEFFER would take a portion of this percentage for himself and then make kickback payments to defendant for his referrals to FUSION RX. Defendant initially received a kickback of 35% of the reimbursement amount FUSION RX received stemming from his referrals. For example, defendant received a kickback payment, through PHIRX, on February 10, 2015, in the form of check number 2162, drawn on a Sheridan Medical bank account and written to PHIRX, in the amount of $712,395.44. After a lunch meeting with VAHEDI and KIEFER in or around March 2015, defendant's kickback percentage increased to 45 percent, as reflected in a kickback payment issued in or around May 2015.

In order to facilitate the prescription referrals, defendant and other marketers provided preprinted prescription script pads to physicians, including physicians who were not otherwise treating a particular patient. Defendant further encouraged some patients to seek prescriptions from those same physicians. VAHEDI provided these preprinted prescription forms to defendant to generate compounded drug prescriptions referrals and had selected various "check-the-box" options on the form to maximize the amount of insurance reimbursement for the compounded drugs, even though such "check-the-box" preprinted prescriptions were inconsistent with a genuine medical need for a compounded drug, which should be rare and individualized to a specific patient's need. Using the preprinted script pad forms, physicians would select a compounded drug formulation from the form's options and the marketers or respective physicians would send the prescriptions to FUSION RX for dispensing.

Knowledge/Willfulness

Defendant, VAHEDI, and KIEFFER knew it was illegal to pay remuneration to induce the referral, order, or purchase of any item or service reimbursed under a Federal health care program.  Indeed, in an attempt to conceal the illegal nature of payments to defendant, KIEFFER and defendant specifically discussed that, if the arrangement was ever questioned, KIEFER could backdate invoices to make it appear that KIEFFER paid PHIRX a flat-rate marketing fee, rather than the actual marketing fee, which was based on the volume of prescriptions that were referred to FUSION RX.  Relatedly, defendant told KIEFFER that he should consider terminating defendant and his PHIRX representatives as independent contractors, so that defendant and other PHIRX representatives could be "hired" as purported W-2 employees of FUSION RX, in an attempt to circumvent the federal anti-kickback statute and appear to fall under one of its safe harbors.

Defendant further understood that claims for the provision of compounded drugs, based on prescriptions of questionable necessity procured through kickbacks, were submitted from FUSION RX to various insurance providers, including Federal health care programs, via interstate wires, and then shipped to patients by FUSION RX.

Accounting

From May 2014 to at least February 2016, FUSION RX received over $14 million in reimbursement from health care benefit programs, including over approximately $5 million from federally-funded health care programs.  As a result of facilitating the authorization and steering of compounded drug prescriptions, defendant, through PHIRX, received approximately $5,428,019.  Defendant used these proceeds to pay varying amounts to patients to incentivize these patients to fill

their prescriptions for compounded drugs at FUSION RX and to become
marketers who generated such prescriptions for FUSION RX at
defendant's behest.  Defendant kept the remaining proceeds for
himself.

Approximately $1,250,000 of the amount PHIRX received was for
prescriptions billed to Federal health care programs.

Other Conduct

During the course of defendant's relationship with FUSION RX,
VAHEDI, and KIEFFER, defendant learned about FUSION RX's copayment
practices.  As part of FUSION RX's contracts to do business with
various insurance networks, through Pharmacy Benefit Managers (PBMs),
FUSION RX agreed to collect copayments from patients for the
prescriptions FUSION RX fulfilled.  Because the copayments created a
disincentive for patients to request expensive and potentially
unnecessary compounded drug prescriptions, initially VAHEDI and
KIEFFER agreed not to collect copayments from customers.  To the
extent patients were occasionally charged copayments, FUSION RX would
provide gift cards to patients to offset the amount of the
copayments.

Later, after concerns surfaced that PBMs and insurance providers
might audit FUSION RX to determine whether FUSION RX was actually
collecting copayments, VAHEDI and KIEFFER agreed that FUSION RX would
still not collect copayments from patients, but would make it appear
falsely that copayments were being collected.  To this end, funds
from FUSION RX were used to purchase American Express ("AMEX") gift
cards, which FUSION RX staff used to pay the copayments on patients'
behalf and without patients' knowledge.  FUSION RX submitted claims
on these prescriptions to various insurance providers, falsely

1 representing that these patients had paid the required copayments.

2 These false representations were material to health care benefit

3 programs, who paid the underlying claims relying on the

4 misrepresented copayments.

5     VAHEDI and KIEFFER enlisted defendant to help them maintain the

6 illusion that patients were paying these copayments, which defendant

7 knew were actually paid with the AMEX gift cards purchased by FUSION

8 RX. For example, on April 22, 2015, VAHEDI emailed defendant and

9 KIEFFER with the subject line "Audit was today" and instructed as

10 follows: "Please make sure that all your patients know to say that

11 they did pay the copay and that they paid with credit card. If asked

12 for a card number the response should be I don't remember which card

13 I used or I don't have my wallet or purse with me." Similarly,

14 VAHEDI used KIEFFER as a conduit to make sure that defendant's

15 patients falsely confirmed that they paid a copayment for their

16 prescriptions. For example, on March 5, 2015, VAHEDI sent a text

17 message to KIEFFER, writing: "You have to make sure that all of

18 [defendant's] people say they paid a copay if asked."

19 SENTENCING FACTORS

20     16. Defendant understands that in determining defendant's

21 sentence the Court is required to calculate the applicable Sentencing

22 Guidelines range and to consider that range, possible departures

23 under the Sentencing Guidelines, and the other sentencing factors set

24 forth in 18 U.S.C. § 3553(a). Defendant understands that the

25 Sentencing Guidelines are advisory only, that defendant cannot have

26 any expectation of receiving a sentence within the calculated

27 Sentencing Guidelines range, and that after considering the

28 Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:          8                     [USSG § 2B4.1(a)]

Loss between
$550K and $1.5M          +14    [USSG §§ 2B4.1(b)(1), 2B1.1(b)(1)(H)]

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

                    WAIVER OF CONSTITUTIONAL RIGHTS

20. Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.    The right to persist in a plea of not guilty.

        b.    The right to a speedy and public trial by jury.

        c.    The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

17

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 37 months, defendant gives up the right to appeal all of the following:

18

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of forfeiture ordered.

RESULT OF WITHDRAWAL OF GUILTY PLEA

24. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be

admissible against defendant, and defendant will not assert, and
hereby waives and gives up, any claim under the United States
Constitution, any statute, or any federal rule, that any Cooperation
Information or any evidence derived from any Cooperation Information
should be suppressed or is inadmissible; and (c) should the USAO
choose to pursue any charge that was either dismissed or not filed as
a result of this agreement, then (i) any applicable statute of
limitations will be tolled between the date of defendant's signing of
this agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

EFFECTIVE DATE OF AGREEMENT

25.  This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

BREACH OF AGREEMENT

26.  Defendant agrees that if defendant, at any time after the
effective date of this agreement, knowingly violates or fails to
perform any of defendant's obligations under this agreement ("a
breach"), the USAO may declare this agreement breached.  For example,
if defendant knowingly, in an interview, before a grand jury, or at
trial, falsely accuses another person of criminal conduct or falsely
minimizes defendant's own role, or the role of another, in criminal
conduct, defendant will have breached this agreement.  All of
defendant's obligations are material, a single breach of this

1  agreement is sufficient for the USAO to declare a breach, and

2  defendant shall not be deemed to have cured a breach without the

3  express agreement of the USAO in writing.  If the USAO declares this

4  agreement breached, and the Court finds such a breach to have

5  occurred, then:

6           a.  If defendant has previously entered a guilty plea

7  pursuant to this agreement, defendant will not be able to withdraw

8  the guilty plea.

9           b.  The USAO will be relieved of all its obligations under

10 this agreement; in particular, the USAO: (i) will no longer be bound

11 by any agreements concerning sentencing and will be free to seek any

12 sentence up to the statutory maximum for the crime to which defendant

13 has pleaded guilty and (ii) will no longer be bound by any agreement

14 regarding the use of Cooperation Information and will be free to use

15 any Cooperation Information in any way in any investigation, criminal

16 prosecution, or civil, administrative, or regulatory action.

17          c.  The USAO will be free to criminally prosecute

18 defendant for false statement, obstruction of justice, and perjury

19 based on any knowingly false or misleading statement by defendant.

20          d.  In any investigation, criminal prosecution, or civil,

21 administrative, or regulatory action: (i) defendant will not assert,

22 and hereby waives and gives up, any claim that any Cooperation

23 Information was obtained in violation of the Fifth Amendment

24 privilege against compelled self-incrimination; and (ii) defendant

25 agrees that any Cooperation Information and any Plea Information, as

26 well as any evidence derived from any Cooperation Information or any

27 Plea Information, shall be admissible against defendant, and

28 defendant will not assert, and hereby waives and gives up, any claim

1  under the United States Constitution, any statute, Rule 410 of the
2  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
3  Criminal Procedure, or any other federal rule, that any Cooperation
4  Information, any Plea Information, or any evidence derived from any
5  Cooperation Information or any Plea Information should be suppressed
6  or is inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

7

OFFICE NOT PARTIES

8

9       27.  Defendant understands that the Court and the United States
10  Probation and Pretrial Services Office are not parties to this
11  agreement and need not accept any of the USAO's sentencing
12  recommendations or the parties' agreements to facts or sentencing
13  factors.

14       28.  Defendant understands that both defendant and the USAO are
15  free to: (a) supplement the facts by supplying relevant information
16  to the United States Probation and Pretrial Services Office and the
17  Court, (b) correct any and all factual misstatements relating to the
18  Court's Sentencing Guidelines calculations and determination of
19  sentence, and (c) argue on appeal and collateral review that the
20  Court's Sentencing Guidelines calculations and the sentence it
21  chooses to impose are not error, although each party agrees to
22  maintain its view that the calculations in paragraph 17 are
23  consistent with the facts of this case.  While this paragraph permits
24  both the USAO and defendant to submit full and complete factual
25  information to the United States Probation and Pretrial Services
26  Office and the Court, even if that factual information may be viewed
27  as inconsistent with the facts agreed to in this agreement, this

28

22

1  paragraph does not affect defendant's and the USAO's obligations not

2  to contest the facts agreed to in this agreement.

3      29.  Defendant understands that even if the Court ignores any

4  sentencing recommendation, finds facts or reaches conclusions

5  different from those agreed to, and/or imposes any sentence up to the

6  maximum established by statute, defendant cannot, for that reason,

7  withdraw defendant's guilty plea, and defendant will remain bound to

8  fulfill all defendant's obligations under this agreement.  Defendant

9  understands that no one -- not the prosecutor, defendant's attorney,

10  or the Court -- can make a binding prediction or promise regarding

11  the sentence defendant will receive, except that it will be within

12  the statutory maximum.

13  ///

14  ///

15  ///

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NO ADDITIONAL AGREEMENTS

2       30.   Defendant understands that, except as set forth herein,

3   there are no promises, understandings, or agreements between the USAO

4   and defendant or defendant's attorney, and that no additional

5   promise, understanding, or agreement may be entered into unless in a

6   writing signed by all parties or on the record in court.

7           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8       31.   The parties agree that this agreement will be considered

9   part of the record of defendant's guilty plea hearing as if the

10  entire agreement had been read into the record of the proceeding.

11  AGREED AND ACCEPTED

12  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
13  CALIFORNIA

14  NICOLA T. HANNA
    United States Attorney

15

16

17  _____        Date
    ASHWIN JANAKIRAM
18  ALEXANDER B. SCHWAB
    Assistant United States Attorneys

19

20  _____        Date
    JOSHUA PEARSON
21  Defendant

22

23

24  _____        Date
    GREGORY E. GOLDBERG
    Attorney for Defendant
25  JOSHUA PEARSON

26

27

28

1

NO ADDITIONAL AGREEMENTS

2      30.   Defendant understands that, except as set forth herein,

3   there are no promises, understandings, or agreements between the USAO

4   and defendant or defendant's attorney, and that no additional

5   promise, understanding, or agreement may be entered into unless in a

6   writing signed by all parties or on the record in court.

7

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8      31.   The parties agree that this agreement will be considered

9   part of the record of defendant's guilty plea hearing as if the

10  entire agreement had been read into the record of the proceeding.

11  AGREED AND ACCEPTED

12  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
13  CALIFORNIA

14  NICOLA T. HANNA
    United States Attorney

15

16

17  _____        9/16/19
    ASHWIN JANAKIRAM                        _____
18  ALEXANDER B. SCHWAB                     Date
    Assistant United States Attorneys

19

20  _____        9/16/19
    JOSHUA PEARSON                          _____
21  Defendant                               Date

22

23                                          9/16/2019

24  _____        _____
    GREGORY E. GOLDBERG                     Date
    Attorney for Defendant
25  JOSHUA PEARSON

26

27

28

24

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.


_____          9/16/19
JOSHUA PEARSON                            Date
Defendant

25

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JOSHUA PEARSON's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.



_____                      , 9/16/2019
GREGORY E. GOLDBERG                            Date
Attorney for Defendant
JOSHUA PEARSON

26

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>JOSHUA PEARSON,<br><br>      Defendant. | CR No.<br><br>I N F O R M A T I O N<br><br>[42 U.S.C. § 1320a-7b(b)(1)(B):<br>Illegal Remunerations; 18 U.S.C.<br>§ 2(b): Causing an Act to Be Done;<br>18 U.S.C. § 982 and 28 U.S.C.<br>§ 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

COUNT ONE

[42 U.S.C. §§ 1320a-7b(b)(1)(B); 18 U.S.C. § 2(b)]

I.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

A.   Relevant Individuals and Entities

1.   Dr. N. Vahedi Pharmacy, Inc., doing business as Fusion Rx Compounding Pharmacy ("Fusion Rx"), was a pharmacy located at 2001 Westwood Boulevard, Suite A, Los Angeles, California 90025, within the Central District of California.  Fusion Rx operated primarily as a multi-state mail order pharmacy and derived the vast majority of its revenue from filling and refilling, by mail, prescriptions for compounded medications.

2.   Navid Vahedi ("Vahedi") was a resident of Los Angeles, California, within the Central District of California, who owned and operated Fusion Rx since its formation in or about February 2009.

3.   Joseph S. Kieffer ("Kieffer"), a resident of Los Angeles, California, owned and operated a business using the name "Sheridan Medical," which was formed in California in or about 2011.   Sheridan Medical served as an intermediary between Fusion Rx and individuals referred to as "marketers."   Kieffer, through Sheridan Medical, would pay "marketers" to generate and steer prescriptions for compounded drugs to Fusion Rx.   Vahedi, through Fusion Rx, would reimburse Kieffer, through Sheridan Medical, for these referral payments.

4.   PHIRX LLC ("PHIRX") was a Utah corporation formed on or about May 15, 2014, to "market" compounded drugs to physicians. Defendant JOSHUA PEARSON owned and operated PHIRX, which generated and steered prescriptions for compounded drugs to Fusion Rx, in exchange for payments from Kieffer, paid through Sheridan Medical.

B.   Compounded Drugs

5.   "Compounding" was a practice in which a licensed pharmacist or a licensed physician combined, mixed, or altered ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient.   Compounded drugs were not approved by the United States Food and Drug Administration ("FDA"), that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs and such formulations were not "FDA-approved."

6.   Compounded drugs were prescribed by a physician generally when an FDA-approved drug did not meet the health needs of a particular patient.   For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or a

2

1　preservative, a compounded drug could be prepared excluding the
2　substance that triggered the allergic reaction. Compounded drugs
3　would also be prescribed when a patient could not consume a
4　medication by traditional means, such as an elderly patient or a
5　child who could not swallow an FDA-approved pill and needed the drug
6　in a liquid form that was not otherwise available. Because
7　compounded medications were intended to be tailored to the needs of
8　specific patients, the reimbursement rates for compounded medications
9　were often higher than those of FDA-approved medications.

10　　C.　TRICARE

11　　7.　TRICARE was a Federal health care program, as defined by 42
12　U.S.C. § 1302a-7b(f)(1), that provided health care benefits, items,
13　and services to Department of Defense beneficiaries worldwide,
14　including active duty service members, National Guard and Reserve
15　members, retirees, their families, and survivors.

16　　8.　TRICARE provided health care benefits for certain
17　prescription drugs, including certain compounded drugs, that were
18　medically necessary and prescribed pursuant to TRICARE rules and
19　regulations.

20　　D.　Medicare

21　　9.　Medicare provided benefits to individuals who were 65 years
22　and older or disabled. Medicare was administered by the Centers for
23　Medicare and Medicaid Services, a federal agency under the United
24　States Department of Health and Human Services. Medicare was a
25　Federal health care program, as defined by 42 U.S.C. § 1302a-
26　7b(f)(1).

27　　10.　To participate in Medicare, providers, including
28　pharmacies, were required to submit applications in which the

3

1  providers agreed to comply with all Medicare-related laws and
2  regulations, including the federal anti-kickback statute (42 U.S.C.
3  § 1320a-7b(b)) (the "Anti-Kickback Statute"), which proscribes the
4  offering, payment, solicitation, or receipt of any remuneration in
5  exchange for a patient referral or referral of other business for
6  which payment may be made by any federal health care program.  If
7  Medicare approved a provider's application, Medicare assigned the
8  provider a Medicare "provider number," which was used for processing
9  and paying claims.

10      11.  Medicare reimbursed providers for certain compounded drugs
11  that were medically necessary to the treatment of a beneficiary's
12  illness or injury, were prescribed by a beneficiary's physician or a
13  qualified physician's assistant acting under the supervision of a
14  physician, and were provided in accordance with Medicare regulations
15  and guidelines that governed whether a particular service or product
16  would be reimbursed by Medicare.

17  II.  UNLAWFUL REMUNERATION

18      12.  On or about February 10, 2015, in Los Angeles County,
19  within the Central District of California, and elsewhere, defendant
20  PEARSON knowingly and willfully solicited and received remuneration,
21  that is, check number 2162 in the amount of $712,395.44 drawn on
22  Sheridan Medical's First Bank account ending in 6385, in return for
23  defendant PEARSON, through PHIRX, arranging for and recommending the
24  purchase and order of compounded drug prescriptions dispensed at
25  Fusion Rx, a good, service, or item for which payment may be made in
26  whole and in part under a Federal health care program, specifically
27  including TRICARE and Medicare.

28

4

FORFEITURE ALLEGATION

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

13. Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), in the event of the defendant PEARSON's conviction of the offense set forth in this Information.

14. If so convicted, defendant PEARSON shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

15. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), defendant PEARSON, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been

5

1 │ substantially diminished in value; or (e) has been commingled with

2 │ other property that cannot be divided without difficulty.

3

4

5 │                                  NICOLA T. HANNA

6 │                                  United States Attorney

7

8 │                                  BRANDON D. FOX

                                 Assistant United States Attorney

9 │                                  Chief, Criminal Division

10 │                                  RANEE A. KATZENSTEIN

                                 Assistant United States Attorney

11 │                                  Chief, Major Frauds Section

12 │                                  KRISTEN A. WILLIAMS

                                 Assistant United States Attorney

13 │                                  Deputy Chief, Major Frauds Section

14 │                                  ASHWIN JANAKIRAM

                                 ALEXANDER B. SCHWAB

15 │                                  Assistant United States Attorneys

                                 Major Frauds Section

16

17

18

19

20

21

22

23

24

25

26

27

28